1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Zach Rosenblatt, Esq. SBN 345034**
**ZSR LAW**
406 Broadway, #125
Santa Monica, CA 90401
Telephone: 310-529-1213
Email: zachsrosenblatt@gmail.com
*ATTORNEY FOR DEFENDANT/COUNTERCLAIMANT, KATARINA BENZOVA*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUNDAM TOURING SERVICES US LLC; GUNDAM PRODUCTIONS, LLC; AND WATERHEAD INTERNATIONAL,INC. | Case No.: 2:23-cv-08968-FMO; |
| Plaintiffs, Counter-Defendants | **BENZOVA'S OPPOSITION TO TEAM BRAZIL'S MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT** |
| vs. | |
| KATARINA BENZOVA, | |
| Defendant, Counterclaimant | |
| GUNS N ROSES; TEAM BRAZIL MANAGEMENT INC; FERNANDO LEBEIS; AXL ROSE; SAUL HUDSON; ANDREW MCKAGAN | |
| Third-Party Defendants | |

1

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION…………………………………………………7

II.   STATEMENT OF FACTS………………………………….......8

III.  LEGAL STANDARDS…………………………………………9

IV.   ARGUMENT……………………………………………………10

      A. BENZOVA SUFFICIENTLY PLED CMI……………………10

      B.  SUPPLEMENTAL JURISDICTION IS APPROPRIATE OVER

          SEXUAL HARRASSMENT CLAIMS………………………15

      C. SEXUAL HARRASSMENT IS NOT TIME-BARRED………18

      D. CALIFORNIA CIVIL CODE §51.9 DOES APPLY………….18

      E. CAUSES OF ACTION 8-13 ARE PROPERLY PLED……….20

      F.  BENZOVA SUFFICIENTLY PLED UNFAIR TRADE

          PRACTICES ……………………………………………28

      G. PLAINTIFFS' MOTION FOR A MORE DEFINITE

          STATEMENT SHOULD BE DISMISSED ……………………29

V.    CONCLUSION……………………………………………. …..30

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Agence Fr. Presse v. Morel*, 769 F. Supp. 2d 295, (S.D.N.Y. 2011) ........................11

*Agence France Presse v. Morel, 769 F. Supp. 2d 295 (S.D.N.Y. 2011)* ...................11

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937. ...................................................10

*Bell Atlantic Corp. v. Twombly* (2007) 550 US 544, 555, 127 S.Ct. 1955, 1964. .....8

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 . Ed. 2d 929(2007) ....................................................................................................................10

*Bronx Conservatory of Music, Inc. v. Kwoka* 2021 U.S. Distr. LEXIS 127578......18

*Cel Tech Communications Inc v. Los Angeles Cellular Telephone Co*. 79 Cal. Rptr. 2d 207 (Cal. Ct. App 1997)...............................................................................29

*City of Santa Monica v. Gabriel (2010) 186 CA4th 882, 112 CR3d 574, 579* ........29

*Diaz v. Kay-Dix Ranch* (1970)  CA3d 588, 88 CR 443, 445..................................29

*Effects Associates, Inc. v. Cohen* 908 F.3d 555, (1990)..........................................17

*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951......................24

*Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019)...11

*Friedman v. Live Nation Merchandise, Inc.*, 833 F. 3d 1180 ..........................13, 16

*Hall v. Hall*, 584 U.S. , 138 S. Ct. 1118, (2018);....................................................19

*Iconics, Inc. v. Massaro*, 192 F.Supp.3d 254 (D. Mass. 2016)..............................12

*Judd v. Weinstein,* 967 F.3d 952(9th Cir. 2020 .....................................................20

3

*Lazar v. Superior Court* (1996) 12 Cal.4th 631,(1996)...........................................25

*Majd v. Bank of Am., N.A.* (2015) 243 Cal.App.4th 1293(Jan. 14, 2016). ..............28

*McGucken v. Chive Media Grp.,LLC*, No. 18-cv-01612-RSWL, 2018 U.S. Dist. LEXIS 115635, 2018 WL 3410095 (C.D. Cal. July 11,2018) ........................11,13

*Mitchell v. Hawley*, 83 U.S. 544 (1872), ...........................................21

*Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295 (3d Circ. 2011)..................11

*PenneBaker v. Kimble,* 126 Or. 317 (1928*)*.............................................25

*Resolution Trust Corp. v. Koock*, 867 F. Supp. 284 (E.D. Pa. 1994)......................26

*Rhoads v. Harvey Publication*, 1982 Copyright L. Dec. (CCH) ¶ 25, 349 (Ariz. Ct. Ap 1981............................................................25

*Rohn Padmore, Inc. v. LC Play*, Inc. 679 F. Supp. 2d 454 ; 210 U.S. Distr. LEXIS 1833****30................................................................18

*Salahutdin v. Valley of California, Inc*. (1994) 24 Cal.App.4th 555 ......................27

*Schneider v. You Tube LLC*, 649 F. Supp. 3d 872 (2023)..................13,14,21,23

*Siry Investment, LP v. Farkhondehpour*, 513 P.3d 166 (Cal. 2022)..............21,22

*Spinelli v. NFL*, 903 F. 3d 185 (2d Cir. 2018)......................................21,22,25

*Spreckles v. Gorril*, 152 Cal. 383, 92 P. 1011 (1907)...........................21,22,23

*Stevens v. Coreogical Inc*., 899 F. 3d 666, 673 (9th Cir. 2018) cert denied, 139 S. Ct. 1222 L. Ed 2d 208 (2019) ................................................11,14

*Tempur-Pedic Int'l Inc. v. Angel Beds LLC* (SD TX 2012) 902 F. Supp.2d 958.....30

## STATUTES

Fed Rule 9(b) ....................................................................................................9

Unfair Trade Practices §17200 ...........................................................................26

17 U.S.C § 101 ....................................................................................................12

17 U.S.C §101(2), ...............................................................................................16

17 U.S.C. § 1202 ...........................................................................................passim

28 U.S.C. § 1367 ................................................................................................14

*Cal Civil Code* § 3294(b) .....................................................................................35

*Cal Gov't Code* §§ 12940 ....................................................................................23

*Cal. Civ. Code* §1550 ..........................................................................................22

*California Civil Code* § 1567 ..........................................................................16, 17

*California Civil Code § 1572* ........................................................................*passim*

*California Civil Code* § 1798.140; ......................................................................20

*California Civil Code §* 1962 ...............................................................................20

*California Civil Code* § 681 .................................................................................20

*California Civil Code* §3344 ................................................................................20

*California Civil Code* §51.9 .................................................................................18

*California Civil Code* §682 ..................................................................................20

# TREATISES

9A C. Wright & A. Miller, Federal Practice and Procedure § 2382, p. 10 (3d ed.

   2008) (Wright & Miller) ........................................................................23

*Nimmer on Copyright* §5.03, 5-14 ............................................................23

Restatement (Second) of Contracts § 163 (1981 .......................................24

## MEMORANDUM OF POINTS AND AUTHORITY

### I. INTRODUCTION

On February 20, 2025, Counter- Defendants / Plaintiffs (hereinafter "Counter-Defendants" or "Plaintiffs") filed their Motion to Dismiss (hereinafter "MTD" or their "Motion" ) for actions 4-16 of Ms. Benzova's (hereinafter "Defendant" or "Counterclaimant" or  "Benzova") Counterclaim (hereinafter the "Complaint" or "Counterclaim) or "(*Docket No. 57-1)*". [ *Docket No. 57-1*]; [*Docket No. 59*]

Plaintiffs did not seek to dismiss the 156 underlying individual actions for copyright infringement. However a substantial portion of Plaintiffs' Motion to Dismiss is dedicated to assuming they could use Ms. Benzova's copyright "as they saw fit" because, according to Plaintiffs,  "there is no doubt Counter Defendants had an irrevocable license to use the photographs". [ MTD pg. 10, line 6-7; pg 12, line 12-13] In doing so, Plaintiffs: 1) assume facts that are not in evidence and outside of the pleading; 2) simply ignore well pleaded facts, dates, and figures; and 3) intentionally misquote the Counterclaim.

Plaintiffs also argue that supplemental jurisdiction is inappropriate because the copyright and sexual harassment claims are "completely distinct" and don't share a common nucleus of fact.  [MTD pp.17-18]. However the Counterclaim sets forth the who, what, when, how, and why the sexual harassment and copyright claims are factually bound. Namely, that Fernando Lebeis ("Lebeis")- who is the managing agent and proxy for Guns N' Roses- acted as: 1) direct infringer; 2) vicarious infringer; 3 )contributory infringer ; 4) was manager photographic copyrights 5) was sole negotiator with Benzova; 6) sexual harasser of Benzova; and 7) the creator of severe and pervasive work environment. Further The Complaint also states there was disparate treatment of copyright ownership between Benzova and other photographers on tour.

7

Plaintiffs also argue that fraud and CMI management were not properly pled. However, here, Plaintiffs' analysis simply 1) overlooks dozens of well-pled paragraphs in the Counterclaim or 2) misstates what specific intent is required to satisfy allegations of fraud and violations of Copyright Management Information.

Lastly, Plaintiffs' Motion for a Definite Statement should be dismissed because Plaintiffs' motion, when looked at holistically, is self-contradictory because Plaintiffs assert theories, argue the allegations on the merits, and submit factual allegations outside of evidence and the pleading. Such actions imply they have "fair notice". *Bell Atlantic Corp. v. Twombly* (2007) 550 US 544, 555, 127 S.Ct. 1955, 1964.

For the main reasons cited above, plus the reasons cited therein, Benzova respectfully seeks that the Court deny each and every motion to dismiss, deny the motion for a more definite statement; and/or, in the alternative, grant Benzova leave to amend the Complaint.

## II. STATEMENT OF FACTS

Benzova filed her Counterclaim on January 30, 2025. [*Docket No. 57-1*]. The Complaint sets forth 146 individual causes of actions for copyright infringements, 77 Copyright Management Information ("CMI") violations, three sexual harassment claims, fraud, negligent misrepresentations, and unfair trade practices.

Within the Counterclaim, Benzova alleges that while episodically working for Plaintiffs, she created thousands of photographs as an independent contractor. While doing so, there was only one written contract spanning 6 weeks from 2016-2021, there were no valid work for hire agreements, and there were no assignment of copyrights. Furthermore, Benzova states that, despite her insistence and objections, Plaintiffs thwarted the use of written agreements from 2010-2022. [ *Docket No 57-1*, ¶¶ 178-211].

8

Plaintiffs, up until January 16, 2025 claimed to own of all the photographs at issue. [ *Docket No. 1*] [ *Docket No. 56].* Plaintiffs contentiously litigated this fact since October 2023. *[ Docket No. 1, 18, 23, 24, 35,55, 56*]. Plaintiffs continue to hold out on their website, to third parties, and the public at large, that they are owners of the photographs at issue.

Now, despite not challenging the underlying 146 copyright infringements or claiming to be the owner the copyrights , Plaintiffs simply assume the right to use Benzova's copyrights "as they see fit" throughout their motion.   In doing so, Plaintiffs ignore that they were not, in fact, owners of the copyrights at issue at any time; and 2) that they misrepresented this fact to Benzova, third parties, and the public at large. [ *Docket No. 57-1, ¶¶1039]*

Instead, Plaintiffs now argue that ownership is not a "fact", but is rather an opinion. And since ownership is not a "fact" , then the requisite intent for both fraud and CMI violations has not been "properly" alleged. [ MTD pg. 23, line 19-28; pg. 24, line 3-4].

However, as will be shown within, Plaintiffs' arguments fail for three reasons: 1) determining the factual matter of intent is not suitable on a motion to dismiss; 2) Plaintiffs misstate the issue of requisite intent that is required for fraud and CMI violations; and 3) the status of ownership is indeed a fact, and not an opinion.

### III. LEGAL STANDARDS

**I.    Federal Rule of Civil Procedure Rule 9 (b)** provides:

**(a)** Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally.

9

## II.    <u>Failure to State of Claim</u>:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937. A claim is factually plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the conduct alleged. While the court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. At 678. (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 . Ed. 2d 929(2007)).

## III.    <u>California Civil Code § 1572</u> :

Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with the intent to deceive another party thereto, or to induce him into the contract:

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;

3. The suppression of that which is true, by one having knowledge or belief of the fact.

4. A promise made without any intention of performing it; or,

5. Any other act fitted to deceive.

## IV. ARGUMENT

## A. <u>BENZOVA SUFFICIENTLY PLED CMI</u>

### *1. Copyright Management Information Law:*

Copyright law restricts the removal or alteration of copyright management information ("CMI**")- information such as title, the author, the copyright owner, the terms and conditions for use of the work, and other identifying information set forth in a copyright notice or conveyed in connection with the work**. 17

10

U.S.C. § 1202 (b)-(c); *Stevens v. Coreogical Inc*., 899 F. 3d 666, 673 (9th Cir. 2018)
cert denied, 139 S. Ct. 1222, 203, L. Ed 2d 208 (2019).

The copyright management information can be next to or in close proximity
to the work itself, i.e. the information need not be affixed to the actual work. *Agence
France Presse v. Morel, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011)* ("This Court
rejects movant's argument that CMI must be removed from the photograph itself to
state a claim for removal or alteration of CMI. First, § 1202(b) imposes no such
requirement"). The DMCA defines CMI as information 'conveyed in connection
with the copies' of a work. *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295
(3d Circ. 2011) (holding that the name of the photographer in the printed gutter credit
near image was "copyright management information").

Moreover, **Courts have found numerous CMI in a wide variety of formats.**
*McGucken v. Chive Media Grp.,LLC*, No. 18-cv-01612-RSWL, 2018 U.S. Dist.
LEXIS 115635, 2018 WL 3410095, at *4 (C.D. Cal. July 11,2018) (holding that
watermarks identifying author and owner constitute CMI); *Iconics, Inc. v. Massaro*,
192 F.Supp. 3d 254, 272 (D. Mass. 2016) ("Copyright headers are paradigmatic
CMI."); *Agence Fr. Presse v. Morel*, 769 F. Supp. 2d 295, 306 (S.D.N.Y.
2011)(finding that notations containing author and copyright
owner's name constitutes CMI); *105th Congressional Report*, 2d Session Senate 105-
190, pg. 35-36

To prove a §1202(b) claim a plaintiff must show that the infringing defendants
knew the prohibited act would "induce, enable, facilitate, or conceal" infringement.
*Stevens*, 899 F.3d at 673. At the pleading stage, a plaintiff "must plead facts plausibly
showing the alleged infringer had this required mental state." *Free Speech Sys., LLC
v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019).

11

### *2. Plaintiffs' CMI Arguments*:

Plaintiffs argue Benzova's CMI violations must be dismissed with without leave to amend because :1) Logos do not constitute CMI or suggest ownership; 2) Plaintiffs assumed they owned the copyrights and "therefore the intent requirement is not met"; and 3) that Benzova "admits" the CMI failed to provide information concerning authorship." (MTD pp. 15, line19 -24; . pg. 16 line 24-28;. pg. 17, line 3-12.)

However all of these arguments are without merit. First, logos do convey and indicate ownership. *Iconics, Inc. v. Massaro*, 192 F.Supp. 3d 254, 272 (D. Mass. 2016).

Further, The Counterclaim demonstrates that the Guns N' Roses logo, which appears catty-corner, near, and sometimes is superimposed on photographs, constitutes CMI because: it is "information conveyed with copies of the photographs" . 17 U.S.C. § 1202. Thus, The logo "indicates ownership", and functions as a header. [see generally *Docket No. 57-3] ; Iconics, Inc. v. Massaro*, 192 F.Supp. 3d 254, 272 (D. Mass. 2016)

In addition, the Counterclaim sets forth numerous forms of CMI that were used, including: 1) the translucent Guns N Roses logo that is stamped on the photos themselves; 2) copyright notice ; 3) removal of watermark; 4) and terms and conditions of the website that quote language from § 1202. [ *Docket No. 57-1 ¶¶ 200, 203, 212, 218, 231- 1035, 1039,* 1050; *Docket No. 57-3*]. Paragraph 200 states Plaintiffs knowingly took intentional and affirmative steps to further their misrepresentation ownership by "forcing Benzova to remove watermarks from her photographs; publicly declaring, within the terms of use on their website, that they are the owners of all photographs; and stamping the GNR trademark on Benzova's photographs…Such actions were taken to induce, enable, and/or conceal infringement". [ *Docket No. 57-1 ¶200*] ; *McGucken v. Chive Media Grp.,LLC*, No.

18-cv-01612-RSWL, 2018 U.S. Dist. LEXIS 115635, 2018 WL 3410095, at *4 (C.D. Cal. July 11,2018) (holding that watermarks identifying author and owner constitute CMI); *Schneider v. You Tube LLC*, 649 F. Supp. 3d 872, *889 2023 U.S. Distr. LEXIS 1878, **36 (stating tags and registrations which carry clip file name constitute CMI).

Further the Counterclaim sets forth that Plaintiffs had requisite intent. The counterclaim states Plaintiffs had: 1) direct access to photographs; 2) **Plaintiffs selected and uploaded photographs themselves; 3)** they authored the agreements whereby any work for hire term expired and/or was inoperative; 4) Plaintiffs are sophisticated parties who have been part of photographic copyright lawsuits; and 5) Benzova directly notified Lebeis of infringing activities. [*Docket 57-1*, ¶¶ 154, 156, 158, 159, 160, 233, 234-236]. Further ¶ 200 states, actual knowledge of these unauthorized changes, removal, and alterations to copyright management information is demonstrated by the terms and use section of www.gunsnroses.com, which uses the exact diction from 17 U.S.C. §1202.

Further it should be noted that Plaintiffs misstate the intent requirement. The intent requirement is: 1 )to know the CMI is false *or removed* and 2) to induce, enable, or conceal infringement. § 1202(b)(3); *Friedman v. Live Nation Merchandise, Inc.*, 833 F. 3d 1180 at 1188, Court of Appeals, 9th Circuit 2016 ("We note at the outset that the district court focused on the wrong question. The statute does prohibit the intentional removal of CMI. *See* 17 U.S.C. § 1202(b)(1). But Friedman could also prevail upon a showing that Live Nation distributed his works with the *knowledge* that CMI had been removed, even if Live Nation did not remove it")( emphasis added)§ 1202(b)(3).

Furthermore, "under 1202(b)" a party may, "establish scienter by 'demonstrating a **past pattern of conduct** or **modus operdandi** that the defendant was aware or had reasonable grounds to be aware of the probable future impact of

its actions.'" *Schneider v. You Tube LLC* 649 F. Supp.3d 872, *890; 2023 U.S. Dist. LEXIS 1878, **38 (emphasis added) ; *Stevens v. Corelogic,* 889 F.3d 666, 674 (9th Cir. 2018).

Here, the Counterclaim sets forth facts where Plaintiffs forced Benzova to remove watermarks, which was different than any other photographer. [ *Docket No. 57-1,¶ 200*]. The Counterclaim further states that this removal was part of a plan, pattern and habitual practice( a modus operendi) of serial copyright infringement. Moreover, the Counterclaim states Plaintiff had foreknowledge of CMI- and therefore the "grounds to aware of the probable future impact of its actions"- because the terms of use on their websites  includes exacts dictum from the §1202 statute. . [ *Docket No. 57-1,¶ 150, 151,152,153, 154,176, 177, 180, 182, 193, 196, 198, 200, 201, 203, 207, 208, 210*]; *Stevens v. Corelogic,* 889 F.3d 666, 674 (9th Cir. 2018) Taken together, these specific allegations are more than sufficient to satisfy the CMI scienter requirements, especially in light of the fact that Plaintiffs continue to withhold CMI and metadata that is exclusively in their possession. *Id*.

Plaintiffs' other argument, that Benzova  "admits that there was no CMI" is also misstated.[ MTD pg. 16, line 28].  As the question "was it attributed to someone" else" refers to whether an individual photographer, other than Benzova ,was given standard photo credit (caption credit) in relation to the photograph in question, not whether logos constitute CMI, or whether logos were the only CMI conveyed, or whether Plaintiffs did not have intent to induce or conceal infringement. This is clearly stated on the page that introduces the organization and format of the photograph Exhibits.[ *Docket No. 57-3, pg 1-3*]

Lastly, facts that shall be presented through judicial notice will demonstrate specific images of Plaintiffs'  websites for " Nighttrain" that contains numerous forms of CMI. These forms of CMI, as stated above include : 1) non-generic copyright notices that read: "©Guns N Roses; 2022, 2023, 2024, 2025"; 2) "Guns N

Roses is managed by Team Brazil"; and 3) Terms and Use agreements that convey to the public information about ownership of the photographs on the website.

## B. SUPPLEMENTARY JURISDICTION IS APPROPRIATE OVER SEXUAL HARRASSMENT CLAIMS

28 U.S.C. § 1367 provides in pertinent part:

**(a)** Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Plaintiffs argue the copyright claims over which this Court has original jurisdiction are 1) "entirely distinct" from the alleged sexual harassment; 2) the sexual harassment claims "rest of entirely different facts"; 3) there is no common nucleus of fact; 4) and that the allegations have "absolutely no bearing" on the copyright claims. (MTD pp. 18, line 5-6, line 12-14).

However, Supplemental Jurisdiction is appropriate because the sexual harassment and copyright infringement actions are bound together through the conduct and powers of Fernando Lebeis. The Counterclaim states that Fernando Lebeis, as Guns N' Roses manager and proxy, used his powers to act as: 1) direct infringer; 2) contributory infringer; 3) vicarious infringer; 4) manager of photographic copyrights, photo credit, and logo attribution; 5) was sole negotiator with Benzova; and 6) sexual harasser of Benzova. [*Docket No 57-1,* ¶¶ 193, 194, 196, 197, 200, 201, 202, 203,204, 205, 209, 214, 215, 217, 219, 220, 222, 224, 1094-1132]; *California Civil Code* § 1567. Furthermore, the Counterclaim states that the

15

continued course of long term-sexual harassment, hostility, and retaliation materially affected the terms, conditions, and privileges of her work. [*Docket No. 57-1,* ¶1131.]. The Counterclaim goes on to specifically allege which terms, conditions, privileges, were affected. [*The Counterclaim* ¶¶1063-1093, 1112-1127]

Furthermore numerous specific instances are properly alleged where copyright ownership, failure to satisfy copyright writing formalities, withholding payments from Benzova, as well as severe and pervasive sexual harassment are bound together within in the same event/occurrence/circumstance. [see e.g. *Counterclaim* ¶¶1112- 1118, 1123, 1125]

The Counterclaim specifically alleges the sexual harassment and copyright infringement arises out of same nucleus of fact. The Complaint states that Ferando Lebeis's discriminatory intent and sexual motives were part of his plan to: 1) extort Benzova for sexual consideration by using elements of photographic copyright; 2) were part of the plan to coverup of Plaintiffs' past serial infringement; 3) pervaded and permeated his work interactions with Benzova (which centered around her photographic copyrights); 4) motivated the withholding of compensation and photo credit from Benzova; and 5) was a main reason why there were no written contracts from 2016 to 2021 and from 2021-2022**.** [ *Counterclaim* ¶¶ 193, 196, 199, 200, 203, 208, 209, 210, 215, 216, 1102-1125] *: California Civil Code* § 1567.

Plaintiffs also argue that Benzova, "in a futile effort", tries to combine facts to establish jurisdiction. [MTD pg 18, line 22-23]. However Plaintiffs claim they have an "implied license".[ *Docket No. 56*]. Thus the facts, circumstances, and context in which any alleged "license" was formed is relevant. The counterclaim clearly states that: 1) the reason why there were no written contracts in the first place is connected to Lebeis's sexual harassment and;  2) that the context in which any alleged "license" was formed took place in a work environment that was filled with

severe and pervasive sexual harassment. [ *Docket No. 57*-1, ¶¶ 199,  211, 214, 215, 217, 219, 224, 1093, 1094-1125]

　　More specifically, the Counterclaim states that the lack of written agreement was necessary for Lebeis to , *inter alia*, 1) wield illusory bargaining power;2) exert false dominance; 3) backtrack on his fraudulent promises; 3) evade obtaining Benzova's permission for use; and 4) to use his authority in a more arbitrary manner in retaliation for Benzova not succumbing to his sexual demands. (*Counterclaim* ¶¶ 189, 190, 199, 211, 214, 215, 217, 219, 224, 1093, 1094-1125].

　　Plaintiffs also argue "there is no explanation of why the lack of written agreements would give Lebeis leverage". [MTD pg. 27-28]. However it is well settled why/how lack of written agreements contribute to fraudulent activity, which is why they are required in Copyright Law. 17 U.S.C §§101(2), 204; *Effects Associates, Inc. v. Cohen* 908 F.3d 555, 557-558 (1990).(Writing requirements "Ensures the creator of a work will not give any his copyright inadvertently and forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and what price.")(emphasis added).

　　Here, the Counterclaim names, on numerous occasions, the purposes served by not utilizing written agreements: 1) concealing infringement; 2) maintaining the false pretense of ownership; 3) oppressing Benzova's rights, demands, and objections when they would arise; and 4) "escaping" liability for past infringements. [*Counterclaim* ¶¶190, 192, 193, 196, 197, 199, 209, 210, 215, 219, 222, 223]

　　Further the Counterclaim sets forth facts where sexual harassment and copyright matters are interrelated through Lebeis's disparate treatment of other photographers versus Benzova. Not only did Lebeis sexually harass and pursue Benzova, but other photographers were allowed to keep ownership, distribute their own photos, and watermark their own photos. [*Counterclaim* ¶¶203, 1083]

Lastly, Plaintiff notes that copyright infringement and sexual harassment have obtained supplemental jurisdiction before. *Rohn Padmore, Inc. v. LC Play*, Inc. 679 F. Supp. 2d 454, *461; 210 U.S. Distr. LEXIS 1833, ***30; Bronx *Conservatory of Music, Inc. v. Kwoka* 2021 U.S. Distr. LEXIS 127578, *6. Therefore this form of supplemental jurisdiction is not novel.

However, even if this situation is a matter of first impression, it is not a legal impossibility for copyright infringement and sexual harassment to be adjudicated together. Here, the purpose of judicial economy would be served and the facts regarding the context and formation of any alleged "license" cannot  be properly adjudicated without the sexual harassment. *Cal. Civ. Code* §§1550, 1565.  Plaintiffs do not argue that the work environment- of Rock N Roll concerts- is where photographic copyrights subsisted. To argue that sexual harassment is not possible within that particular work environment-rock and roll concerts- is absurd.

Therefore Ms. Benzova respectfully moves the court to deny Plaintiffs' Motion to Dismiss supplementary jurisdiction over the sexual harassment claims, while retaining supplementary jurisdiction. In the alternative, Plaintiff seeks leave to amend the Complaint as a matter of right.

## C. SEXUAL HARRASSMENT IS NOT TIME-BARRED

Plaintiffs argue the FEHA causes of action are time barred because the "counterclaim was filed on January 30, 2025, more than two years after the right to sue letter was issued." [ MTD pg. 20, line 20-21].

However, the Supreme Court,  in *Hall v. Hall* (2018), stated cases consolidated under Federal Rule of Civil Procedure 42(a) retain their separate identities. *Hall v. Hall*, 584 U.S. , 138 S. Ct. 1118, 1131 (2018); 9A C. Wright & A. Miller, Federal Practice and Procedure § 2382, p. 10 (3d ed. 2008) (Wright & Miller)( "actions do not lose their separate identity because of consolidation.") .

Specifically, the Court held that "constituent cases retain their separate identities at least to the extent that a final decision in one is immediately appealable by the losing party". *Hall v. Hall*, 584 U.S. , 138 S. Ct. 1118, 1131 (2018).

Here, with respect to the statute of limitations for counterclaims in consolidated cases-while not directly addressed in Hall v. Hall-the retention of separate identities implies that each consolidated case at hand would maintain its own statute of limitations. Thus, since Benzova's filing was made in November 11, 2023 the statute of limitations for that counterclaim- including all the *Cal Gov't Code* §§ 12940(J), 12940(K)- did not lapse due to the consolidation process. [ Docket No. 13] (Case 2:23-cv-09538 was filed November 11, 2023).

Therefore, Plaintiffs' argument regarding the sexual harassment claims being time-barred must be rejected.

## D. CALIFORNIA CIVIL CODE §51.9 DOES APPLY

Plaintiffs argue *California Civil Code* §51.9 does not apply because it cannot apply in the employment context. [ MTD. Pg. 21, line 9-10]

*California Civil Code* §51.9 establishes liability for sexual harassment in business, service, or professional relationships. Under *Cal. Civ. Code* 51.9 a person is liable for sexual harassment when the plaintiff proves the following elements:1) There exists a business, service, or professional relationship between the plaintiff and defendant; 2) The defendant has made unwelcome sexual advances, solicitations, requests, demands for sexual compliance, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were pervasive or severe; 3) The plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including but not limited to emotional distress or the violation of a statutory or constitutional right, as a result of the conduct.

The statute applies to various professional relationships, including but not limited to those involving physicians, psychotherapists, dentists, attorneys, real estate agents, accountants, teachers, and *others in similar positions.*

In *Judd v. Weinstein*, the Ninth Circuit Court of Appeals stated the key element common to the relationships covered by the Cal Civ Code § 51.9 is "an inherent power imbalance exists such that, by virtue of his or her 'business, service, or professional' position, <u>one party is uniquely situated to exercise coercion or leverage over the other</u>". *Judd v. Weinstein,* 967 F.3d 952, 959 (9th Cir. 2020)(emphasis added). The court stated the actor/ producer relationship plainly fell within the scope of §51.9, as it consisted of an inherent power imbalance where Weinstein was "uniquely situated to exercise coercion or leverage over Judd by virtue of his professional position and influence as a top producer in Hollywood". Id.

Here, Fernando Lebeis is the manager of Guns N Roses- a music manager of one of the leading rock bands in the world. And because of this position he used this power and position to exert leverage over Benzova both sexually and professionally. [ *Counterclaim*, ¶¶ 179-185, 187-192, 193-197, 1094-1125]. As such, Cal Civ. Code. § 51.9 applies to Fernando Lebeis. Therefore Benzova moves the Court to reject Plaintiffs' argument or for leave to amend as a matter of right.

## E. CAUSES OF ACTION  8-13 ARE PROPERLY PLED

Plaintiffs make numerous arguments in their attempt to dismiss the misrepresentation causes of action. In doing so, Plaintiffs 1) either simply ignore well pleaded facts;  2) repeat the statement that ownerships is a "legal opinion"; or 3) Plaintiffs misstate the requisite intent for fraud and negligent misrepresentations. *Cal Civ Code* §1572 (2)-(5);

### 1. Ownership Is A Fact, Not An Opinion.

Throughout their motion to dismiss, Plaintiffs argue ownership is a legal opinion. [MTD pg. 23, line 19; pg 24, line 3-4; 22-25]. And since ownership is a legal opinion, "no misrepresentation" is alleged.

Arguing that ownership is an opinion, and not a fact, flies in the face of numerous statues and bodies of law. *California Civil Code* § 681; *California Civil Code* §682; *California Civil Code* § 1798.140; *California Civil Code* § 1962; ; *California Civil Code* §3344.

It is axiomatic that ownership is a factual condition. As elsewhere in property law, within intellectual property- where governments grant limited monopolies- the principle of *nemo dat quod non habet* (no one can give what they do not have) applies.

In *Mitchell v. Hawley*, 83 U.S. 544 (1872), the Supreme Court held that the licensee could not convey to others the right to use the patented machines beyond the expiration of the original term. *Id*. That is, the licensee could not, in fact, transfer rights that extended beyond what they had, in fact, received from the original patentee. *Id; Schneider v. You Tube, LLC* 649 F. Supp. 3d 872, *882; 2023 U.S. Dist. LEXIS 19878, **17; *Spinelli v. NFL*., 903 F.3d 185, 203(2d Cir. 2018) ("It is without question that a sublicensor may not convey more than he owns.") *Spreckels v. Gorril* 152. 383, *386; 92 P. 1011, **1013; 1907 Cal. LEXIS 360, ***3; ("If the statements and representations which were made were *in fact* false, it is immaterial that the defendants believed that the bank would eventually come through its difficulties, or that the defendants did not intend to cheat the plaintiff*")(*emphasis added*); Bell v. Feibush* (2013) 212 Cal.App.4th 1041, 1043-1044 (151 Cal.Rptr.3d 546); *Siry Investment, LP v. Farkhondehpour*, 513 P. 3d 166 - Cal: Supreme Court 2022 (While justifying criminal intent, the Court states: "the defendant induced the

21

plaintiff to loan him more than $200,000 "<u>based on the false pretense he owned a specific trademark …..But these representations were lies</u>, and the asserted enterprise 'a scam;")(emphasis added).

Therefore, here, the question is not whether Plaintiffs "believed" they were owners or whether ownership is an "opinion". But rather: *what was, in fact, the state of ownership of the photographic copyrights when Plaintiffs represented that they were owners of the copyrights*. *Spinelli v. NFL*., 903 F.3d 185, 203(2d Cir. 2018) ("It is without questions that a sublicensor may not convey more than he owns.*")* Although Plaintiffs have claimed and argued that they were the owners of the copyrights in numerous court documents prior, Benzova has been, and is in the fact, the owner of all the photographic copyrights at issue.[*see e.g. Docket No. 1, 18, 24*] *Cal Civ Code* §1572. And she has been the whole time….

Here the Counterclaim alleges on numerous occasions that Benzova objected to Plaintiffs' representation of ownership, objected to Plaintiff's use of her photographs, and demanded certain controls of her photographs. But when these objections arose, Lebeis would stamp out these concerns by falsely representing that Plaintiffs were owners of the photographs when, in fact, they were not. [ *Counterclaim* ¶¶ 183-200, 203, 204, 205, 208-210, 214, 215, 217, 218, 219, 220, 222].

Further the Counterclaim states that this misrepresentation of ownership extended beyond Benzova to third parties and to the public at large. That is, Plaintiffs held out they were owners of Benzova's copyrights-to both third parties and the public at large-when, in fact, they were not. [ *Counterclaim* ¶¶ 216];*Schneider v. YouTube*, LLC, 649 F. Supp. 3d 872, 877( "A license granted without authority will not insulate the licensee from an infringement claim. <u>The sublicensor may not convey more than he owns</u>, and if a sublicensor has no right to issue a particular license, the sublicensee cannot acquire rights in the copyrighted works because the

sublicensor did so anyway. Both the licensee and the sublicensee can be held liable for acting without authorization and thereby infringing the licensor's copyright")(emphasis added); *Beastie Boys v. Monger Energy Company* 983 F. Supp.2d 338, (2013)( stating a nonexclusive license acquires no proprietary rights).

Therefore ownership is a matter of fact, not an opinion. *Id. ; Schneider v. You Tube, LLC* 649 F. Supp. 3d 872, *882; 2023 U.S. Dist. LEXIS 19878, **17. As such Benzova moves the Court to reject the proposition that representations of ownership are legal opinions.

## 2.  Plaintiffs Misstate Fraudulent Intent

Throughout their motion to dismiss Plaintiffs argue "no intent to defraud is alleged". [MTD pg 24, line 26-28, line 2;  pg 25 line 1-2] Plaintiffs go on to argue that is reasonable that they "understood" they were the owners, when, in fact they were not. Therefore, according to Plaintiffs, there is no fraudulent intent. *Id.*

Under *Cal Civ Code* §1572 fraudulent intent can arise in numerous forms, including: 1) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, *though he believes it to be true*; 2) The suppression of that which is true, by one having knowledge or belief of the fact; 3) A promise made without any intention of performing it; or 4) Any other act fitted to deceive. *Spreckels v. Gorril* 152. 383, *386; 92 P. 1011, **1013; 1907 Cal. LEXIS 360, ***3; (If the statements and representations which were made were in fact false, it is immaterial that the defendants believed that the bank would eventually come through its difficulties, or that the defendants did not intend to cheat the plaintiff)

Here, Plaintiffs argument neglects *Cal Civil Code* § 1572 (2)-(4). Plaintiffs merely argue because they believed it to be true that there is no fraudulent intent. [MTD pg 24, line 26-28, line 2;  pg 25 line 1-2] This self serving argument is: 1) not

appropriate at the pleading stage because it is a matter of fact that assumes facts not in evidence;  and 2) misstates the criteria for fraudulent intent. The determining intent is whether the party had the intent to induce one to enter into a contract. Here Plaintiffs admit numerous times that they used this misrepresentations to enter in a "contract". [ MTD pg 24, line 22-24] .

Therefore, fraudulent intent has been properly alleged. Thus, Benzova moves the court to reject Plaintiff's arguments regarding fraudulent intent or, in the alterative, grant leave to amend.

### 3. Fraud is Pled with Proper Specificity

Plaintiffs argue the fraud causes of action are not pled with requisite specificity. [MTD pg 23, line 9-10].

In California, fraud must be pled with specificity, and the elements that need to be alleged with particularity are: 1)Misrepresentation (false representation, concealment, or nondisclosure); 2) Knowledge of falsity (scienter); 3) Intent to defraud or induce reliance; 4) Justifiable reliance and 5) Resulting damages. *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974

Here Plaintiffs simply overlook well pled portion of the Counterclaim. It appears Plaintiffs deliberately ignore paragraphs **188- 228** that focus and detail on the exact substance, who, what, where, when, and why of the fraudulent misrepresentations.

Accordingly: 1) ¶¶188, 189, 190, 193, 194, 195 196, 197, 198, 201, 202, 217 pertain to the misrepresentation; 2) ¶¶ 191, 192, 193, 198, 200 pertain to the scienter; 3)¶ ¶ 191, 193, 194, 200 pertain to the intent to defraud or induce reliance; 4) ¶ 191, 194, 195 196, 198, 200, 218 pertain to the justifiable reliance; 5) And ¶¶ 218, 223, 224, 225, 226 pertain to the resulting damages and harm .

Therefore fraud has been properly pled. Benzova therefore moves the Court to reject Plaintiffs' argument or leave to amend as a matter of right.

### 4. Fraud In Factum, Fraudulent Concealment, Fraudulent Inducement, And Promissory Fraud Are All Properly Pled.

In the context of work for hire/ independent contractor relationships, Nimmer writes, "**if an author is falsely informed by the party commissioning his work that there is a for-hire relationship between them and that the author, therefore, has no copyright interest in his work, it may be that an action will lie against the commissioning party for fraud in the acquisition of the copyright.**" *Nimmer on Copyright* §5.03, 5-14 (emphasis added); *Rhoads v. Harvey Publication*, 1982 Copyright L. Dec. (CCH) ¶ 25, 349 (Ariz. Ct. Ap 1981).

Further, Courts have stated misidentifying ownership (or status as grantor/grantee) is "fraud in the essence" and is sufficient to vitiate consent because 1) **the deceit mispresents the relationship of the parties** and thereby 2) induces/procures exchanges as the result of that misrepresentation. *PenneBaker v. Kimble,* 126 Or. 317 (1928*); J Beverly Hills, Inc. v. JBH Europe B.V., Slip Copy (*2021) at 3; *Spreckels v. Gorril* 152. 383, *386; 92 P. 1011, **1013; 1907 Cal. LEXIS 360, ***3; ("If the statements and representations which were made were in fact false, it is immaterial that the defendants believed that the bank would eventually come through its difficulties, or that the defendants did not intend to cheat the plaintiff")

Here, the Counterclaim properly alleges that Plaintiffs misrepresentation of ownership produced numerous forms of fraud: namely fraud in factum, fraud inducement, promissory fraud, fraudulent concealment, and constructive fraud-because it twisted who had the right and power to exclude, deal, and dispose of all the rights at issue . [*Counterclaim* ¶ 199]

25

### a. Fraud in the Factum

In cases where one party's assent has been procured by fraud in the factum, courts treat the agreement as void and legally ineffective. *Resolution Trust Corp. v. Koock*, 867 F. Supp. 284, 287 (E.D. Pa. 1994) (Robreno, J.) ("Fraud in the factum . . . would render the [agreement] void. . . ."); <u>see also</u> Restatement (Second) of Contracts § 163 (1981). Here, along with ¶¶ 188-228 stated, above,  paragraph 217 of the Counterclaim specifically states that plaintiffs misrepresentation of ownership affected the whole nature of the relationship, actions, and consideration. And that Benzova would not have entered into any such "agreement" if the true nature of the relationship was known. [*Counterclaim* ¶217]; <u>see also</u> Restatement (Second) of Contracts § 163 cmt. a (1981) (defining fraud in the factum as "a misrepresentation as to the character or essential terms of a proposed contract").  As such, fraud in the factum is properly pled.


### b. Fraudulent Concealment

Fraudulent concealment when a party intentionally conceals or suppresses a material fact, while under a duty to disclose, with the intent to defraud another party who is unaware of the fact and would have acted differently if they had known it, resulting in damages. *Boschma v. Home Loan Center, Inc*. (2011) 198 Cal.App.4th 230, 248.

Here the Counterclaim properly pleads fraudulent concealment by stating Plaintiffs hid from Benzova, third parties, and the public at large that they were not the true owners. [ *Counterclaim* ¶¶ 198, 216 ] Their knowledge of this fact is properly pled because: 1) Plaintiffs authored the contracts where any right they had expired, 2) Plaintiffs had access to a copyright attorney at all times; 3) Plaintiffs are sophisticated party who have been in numerous photographic copyright lawsuit

prior.  [ *Counterclaim* ¶¶ 213, 214, 221, 222 ] Further the counterclaim states had Benzova known of these facts she would have not entered into any "agreements". . [ *Counterclaim* ¶¶ 217 ] As such fraudulent concealment is properly pled.

**c. Promissory Fraud**

Promissory fraud in California occurs when a party makes a promise with no intention of performing it at the time the promise is made, intending to deceive or induce another party to enter into a contract or take action. *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638(1996).

Here the Counterclaim properly alleges promissory fraud. The Counterclaim states Fernando Lebeis promised: 1) coffee table books; 2) calendars; 3) profit sharing; and other projects which he had no present intent to perform. The Counterclaim also states the present intent not to perform arose from the fact that because the Plaintiffs were not the owners of the copyrights on question, they could not authorize the publication of certain books and other projects they promised.[ *Counterclaim* ¶¶189, 191, 192, 193, 199, 1093]; See Judicial Notice ( Lebeis Publishing Secretary of State, suggesting Lebeis has foreknowledge of publishing business)

As such promissory fraud is properly pled.

**d. Constructive Fraud**

Constructive fraud occurs when there is a breach of legal or equitable duty, trust, or confidence that results in damage to another, even without actual fraudulent intent *Salahutdin v. Valley of California, Inc*. (1994) 24 Cal.App.4th 555, 562.

Here constructive fraud is properly pled because the presence of confidentially agreements as to the terms of any so-called agreement between the parties gave rise

to a confidential relationship. [ Counterclaim ¶¶ 198, 199, 200, 201, 202 ] Despite Plaintiffs' argument that the parties engaged in "arm's length negotiations", Plaintiffs had a duty to disclose their non-ownership to Benzova.. [MTD pg. 31, line 9] This duty, combined with all the other facts alleged above,  means constructive fraud has been properly pled.[ *Counterclaim* ¶¶ 198, 188-225].

### e. Negligent Misrepresentation

Negligent misrepresentation occurs when a party makes a false representation of a material fact without reasonable grounds for believing it to be true, intending to induce reliance, and the other party justifiably relies on the misrepresentation, resulting in damages. *Majd v. Bank of Am., N.A.* (2015) 243 Cal.App.4th 1293, 1307(Jan. 14, 2016).

Here the Counterclaim properly alleges negligent misrepresentation. The counterclaim alleges Fernando Lebeis engaged in willful ignorance of industry standards, that no written contracts were used for a period of five years, and that Plaintiffs thwarted the use of written contracts despite Benzova's insistence and demands for clarity regarding copyright ownership. [ *Counterclaim* ¶¶ 184,  207, 209, 211 212, 213 214.] Taken together with the allegations pertaining to fraud, Negligent misrepresentation has been properly pled.  [ *Counterclaim* ¶¶ 188-225].

### F. BENZOVA SUFFICIENTLY PLED UNFAIR TRADE PRACTICE

Section17200 provides: "As used in this chapter, unfair competition shall mean and include any unlawful or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising of any act prohibited by Chapter 1 (commencing with §17500) or part 3 of Division 7 of the Business and Professions Code."

28

Each part of 17200's definition of unfair competition operates separately from the other part. *Cel Tech Communications Inc v. Los Angeles Cellular Telephone Co*. 79 Cal. Rptr. 2d 207, 219 (Cal. Ct. App 1997). Further business practices that violate federal laws may be redressed under §17200. *Diaz v. Kay-Dix Ranch* (1970) CA3d 588, 591, 88 CR 443, 445. Also courts have held that sexual harassment can be an unfair business practice. In People ex rel. *City of Santa Monica v. Gabriel (2010) 186 CA4th 882, 888, 112 CR3d 574, 579*. the court stated a landlord's sexual harassment of tenant, made possible by parties commercial relationship and occurring during business related encounters, "had an integral connection with commercial activity" and is therefore a 'business practice' within the meaning of UCL.

Here Benzova sufficiently pled three unfair business practices: 1) serial copyright infringement and violation of copyright management information; 2) fraudulent claiming  of ownership of photos to public and third parties; and 3) pervasive sexual harassment that was made possible by Guns N Roses manager whereby he used his "powers" and authority in connection to photographic copyrights to sexually harass, extort, and deceive Benzova. [*The Counterclaim* ¶¶196-225, 1039, 1041,1074-1075,1050].

Lastly, Benzova alleges past examples, business patterns, and modus operandi of Plaintiffs- in connection with CMI-  where they falsely and orally claiming ownership of photographs that are not theirs.[*Counterclaim*  ¶¶150, 153, 154, 188-225 ]; *Cal Civil Code* § 3294(b)..

Therefore, Benzova has sufficiently pled unfair trade practice. Benzova moves the court to deny Plaintiffs' motion to dismiss; or, in the alternative, grant leave to amend.

29

## G. PLAINTIFFS' MOTION FOR A MORE DEFINITE STATEMENT SHOULD BE DISMISSED

Courts have held that a Rule 12(e) motion is proper only where the complaint is so indefinite that defendant cannot ascertain the nature of the claim being asserted. In such cases, defendant cannot reasonably be expected to frame a proper response. *Tempur-Pedic Int'l Inc. v. Angel Beds LLC* (SD TX 2012) 902 F. Supp.2d 958, 971.

Here, without citing law, Defendants seeks a motion for a more definite statement. However it should be denied because, throughout their motion to dismiss, Plaintiffs argues the merits , asserts theories, and assumes facts outside of evidence and the pleadings. Therefore their motion is self-contradictory and is the result of ignoring well-pleaded facts, not vagueness or indefiniteness within the Counterclaim.

Therefore, Benzova moves for the Motion for a More Definite Statement to be denied. Or, in the alternative, for the Court to grant leave to amend.

## V. CONCLUSION

For the foregoing reasons, the motion to dismiss and/or the motion for a definite statement should be **DENIED**. In the alternative, Benzova requests a leave to amend the Complaint. FRCP 15(a).

Dated: May 1, 2025

  /s/Zach Rosenblatt_____
Attorney for
Defendant/Counterclaimant
KATARINA BENZOVA

30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BENZOVA'S OPPOSITION TO TEAM BRAZIL'S MOTION TO DISMISS AND MOTION FOR A MORE DEFINITE
STATEMENT: GUNDAM 2:23-CV--08968-FMO(EX)